## UNITED STATES *v.* ECKSTEIN (No. 1310).[1]

ARTIFICIAL HORSEHAIR—BOARD'S MANDATE.

On reliquidation the collector disregarded the mandate of the board. The board had made an attempt by its order to segregate the cases in which the artificial horsehair covered by its decision was contained, and it is clear it was intended to decide that the cases named contained artificial horsehair.

## United States Court of Customs Appeals, May 28, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7516 (T. D. 33982).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, of counsel; *Samuel Isenschmid*, special attorney, on the brief), for the United States.

*Comstock & Washburn* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

On the 20th of June, 1906, the Board of General Appraisers rendered a decision covering a large number of protests against the assessment of duty at 30 per cent on artificial horsehair and artificial silk yarns. The board sustained one of the claims of the protests, holding that such artificial horsehair was dutiable at 20 per cent as a nonenumerated article. Appeals were taken from this decision of the board on behalf of the importer as to the proper rate of duty applicable to artificial horsehair. The final decree of the district court reciting that the Circuit Court of Appeals of the Second Circuit had rendered a decree ordering, adjudging, and decreeing that the United States court for the southern district of New York was erroneous, and that the same should be reversed, and that the merchandise was properly dutiable at 6 cents per pound under paragraph 302, and reciting that on appeal to the Supreme Court that decree had been affirmed, an order was entered adjudging and decreeing that the judgment and decree of the United States Court of Appeals for the Second Circuit "be and the same is hereby made the judgment of this court."

The reference to the merchandise in this opinion evidently relates to the merchandise dealt with by the Board of General Appraisers, and a reference is therefore necessary to the decision of the Board of General Appraisers to ascertain what was the subject of determination there.

Turning to the decision of the Board of General Appraisers (T. D. 27442), entitled "In the matter of protests of E. A. Magnin et al.," we find the decision to be, after reviewing the claim under the horsehair provision:

This claim in the protests is sustained and the decisions of the collector modified as to the artificial horsehair included in the importations affected and enumerated in Schedule A. The importers having abandoned all claims as to so-called artificial silk yarn comprised in some of the importations, the same are overruled.

---

[1] Reported in T. D. 34524 (26 Treas. Dec., 924).

Upon a remand to the collector it appeared that in Schedule A there was included a large number of protests, and the schedule consists of the number of the protest, the number of the invoice, and the numbers of the cases included. The protest in question was 147635, the invoice number 15685, and the cases numbered from 4097 to 4106, inclusive. When the collector came to reliquidate under this decision, he reliquidated the contents of four of these cases as artificial silk, notwithstanding the mandate of the board, and thereupon a second protest was filed, and on a review of this action by the Board of General Appraisers the reliquidation as to these cases was overruled and a reliquidation of the items as horsehair directed. From this decision of the board the Government appeals.

We think it is clear that by the action taken in review of the decision of the board the legal effect was to affirm the decision of the Board of General Appraisers as to all items included in this decision. We therefore have to consider only a construction of the language of the decision of the board, which is—

This claim in the protests is sustained and the decisions of the collector modified as to the artificial horsehair included in the importations affected and enumerated in Schedule A.

The Government contends that this language was not intended to import a finding that the contents of the various cases named in Schedule A were in fact artificial horsehair. The language is subject to a possible interpretation which would lead to this result, and the question is at best not free from doubt. But when it is considered that the protests included a large number of importations and a large number of entries and cases, and that an attempt was made by the board in its order to segregate the cases in which the artificial horsehair covered by its decision was contained, the better construction seems to be that the board intended to decide that the cases named contained artificial horsehair.

The case would be stronger for the Government had there been contained in any one of the four boxes named some artificial horsehair—concededly such—commingled with other goods. In that case it might be urged with much more force that it was only the artificial horsehair which was included within these cases that the board undertook to deal with. But it is undeniable that the board did determine that these cases of goods, in some part at least, fell within the decision which it rendered. There was no propriety in including any reference to the four cases in question in its decision if in fact they contained no artificial horsehair, and, it appearing that the contents of these boxes were all of one grade and all alike, so far as the record discloses, it must be held that there was a purpose to determine that the contents were in fact artificial horsehair and fell within the terms of the board's decision

This was the view of the first board decision, accepted by the Board of General Appraisers in the present case, and we think the correct result was reached.

*Affirmed.*